**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br><br>JERRY RICHARDSON and ZOE RICHARDSON,<br><br>Debtors. | BAP No. SC-18-1273-LBKu<br><br>Bk. No. 15-00461-LT13 |
| JERRY RICHARDSON; ZOE RICHARDSON,<br><br>Appellants,<br><br>v.<br><br>PRDO RETAIL INVESTORS, LP; A&C PROPERTIES, INC.,<br><br>Appellees. | **MEMORANDUM**<sup>*</sup> |

Argued and Submitted on September 26, 2019
at Pasadena, California

Filed – October 4, 2019

---

*This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable Laura S. Taylor, Bankruptcy Judge, Presiding

———————

Appearances:    Julian McMillan argued for Appellants; John Stanton
                Addams of Niddrie Addams Fuller Singh LLP argued for
                Appellees.

———————

Before: LAFFERTY, BRAND, and KURTZ, Bankruptcy Judges.


**INTRODUCTION**

Chapter 13[1] debtors Jerry and Zoe Richardson were the guarantors of

a lease between their business and Appellee PRDO Retail Investors, LP

("PRDO"). Postpetition, PRDO, through its property manager, Appellee

A&C Properties, Inc. ("A&C") caused billing statements for prepetition

amounts owed to be sent to the Richardsons at their home address. Some of

those statements contained additional language that was offensive and

threatening. The Richardsons moved for damages under § 362(k) against

PRDO and A&C and its agent. After an evidentiary hearing, the

bankruptcy court found that it could not determine who had added the

offensive language to the billing statements and thus declined to award

———————

[1]Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1532.

any emotional distress or punitive damages. The bankruptcy court, however, found that an award of attorneys' fees was appropriate for A&C's postpetition acts of sending the billing statements to Mr. Richardson. The bankruptcy court reduced or disallowed the majority of fees requested, ultimately awarding just over $20,000 in fees and costs.

Because we conclude that the bankruptcy court did not clearly err in its findings regarding the addition of the offensive language or abuse its discretion in determining the amount of damages, we AFFIRM.

## FACTUAL BACKGROUND

The Richardsons were the guarantors on a commercial lease of real property in Oceanside, California, between their business, Richardson Wilson Enterprises, LLC, dba Hut No. 8, and PRDO. After the business defaulted and filed a chapter 11 bankruptcy, PRDO sued the Richardsons in state court and obtained a judgment of approximately $105,000 against them in July 2014.[2]

The Richardsons filed a chapter 13 case in January 2015 and confirmed a plan.[3] PRDO was listed on the schedules (care of A&C), received notice of the case, and actively participated in it. Nevertheless, during the pendency of the Richardsons' case, between March and

---

[2]The Richardsons' partner, another guarantor, was also named as a defendant in the state court lawsuit. He filed a chapter 7 bankruptcy in May 2014.

[3]The Richardsons completed their plan and received a discharge in May 2018.

November 2015, A&C sent monthly billing statements to the Richardsons' home address, which was also the address for noticing the business. In February 2016, the Richardsons' counsel sent a letter to PRDO and A&C demanding that they cease collection activity, which they apparently did.

In May 2016, the Richardsons filed a motion for sanctions under § 362(k) against PRDO, A&C, and A&C's property manager, Jennifer Cameron,[4] for violations of the automatic stay. In their motion, the Richardsons alleged that, postpetition, despite knowledge of the bankruptcy case, A&C sent seven monthly billing statements to them and that three of those statements contained threats, inappropriate language and racial slurs, which they alleged had been added by Ms. Cameron. They also alleged that Ms. Cameron had called their place of business to demand that they make their payments to the chapter 13 trustee. The Richardsons sought an award of damages, including "monetary damages, emotional distress damages, attorneys' fees and costs, punitive sanctions, and other appropriate sanctions . . . ."

PRDO, A&C, and Ms. Cameron (collectively, "Respondents") opposed the motion.[5] Respondents acknowledged that billing statements

---

[4]Ms. Cameron now goes by the last name of Stumph. For consistency with the bankruptcy court record, she is referred to herein as Ms. Cameron.

[5]The Richardsons did not provide a complete record on appeal. We have thus exercised our discretion to review the bankruptcy court's electronic docket and

(continued...)

may have been sent inadvertently as part of a batch billing, but they denied the remaining allegations, asserting that those allegations were "fraudulent" and that the Richardsons themselves had added the inappropriate language to the three billing statements. Respondents provided copies of telephone billing records to support their assertion that no phone calls had been made to the Richardsons' business.

At the initial hearing on the matter, the bankruptcy court authorized the parties to take discovery. It eventually set the matter for an evidentiary hearing, which took place on September 15 and 18 and October 16, 2017.[6] Mr. and Ms. Richardson testified, as did their neighbor, Charlotte Collins, Ms. Richardson's son, Christopher Simmons, and Stephen A. Hoover, one of the Richardsons' counsel. Ms. Cameron and Joseph C. Cattaneo, A&C's owner, also testified.

Ms. Richardson testified that, during the bankruptcy, the couple did not open the billing statements right away because they had started putting

---

[5](...continued)
pleadings. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957–58 (9th Cir. 1989); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[6]The Richardsons have not provided a copy of the transcript of the October 16, 2017 hearing, at which Mr. Cattaneo was to have concluded his testimony. We are entitled to assume that nothing in that transcript would be helpful to the Richardsons. *See Gionis v. Wayne (In re Gionis)*, 170 B.R. 675, 680-81 (9th Cir. BAP 1994), *aff'd*, 92 F.3d 1192 (9th Cir. 1996) (table) (When an appellant fails to include the entire record, we are entitled to presume that he does not regard the missing items as helpful to his appeal).

all legal correspondence in a box, including correspondence from PRDO, and they believed that if anything needed attention, their attorney would contact them. She testified that she eventually did open the March 2015 statement and was upset by it because it contained abusive language. When she notified her attorney, he told her not to worry about it for the time being and to focus on getting the chapter 13 plan confirmed. Although Ms. Richardson assumed that the abusive and racially derogatory language had been added by Ms. Cameron, she was unaware that Ms. Cameron and her family members were minorities. She was not as upset by the November 2015 statement, which contained a threat to take the Richardsons' home, because her attorney had told her that PRDO could not do so.

Ms. Collins testified that she helped manage the Richardsons' business from March 2015 through July 2016. She testified that during that time she received phone calls from someone named Jennifer demanding to speak with Ms. Richardson. She also witnessed the opening of the November 2015 billing statement and testified that the envelope was sealed before being opened.

Other witnesses testified as to the opening of the billing statements. Mr. Simmons witnessed the opening of one of the sealed billing statements and testified that his mother was distraught when she read it. For his part, Mr. Richardson had no recollection of receiving any collection calls or

6

being present when any of the envelopes were opened. Mr. Hoover testified that he opened all but three of the billing statements. He was able to trace the envelopes back to A&C's mailing machine and testified that there was no evidence of tampering. He also testified that he had met with PRDO's counsel to determine whether the envelopes could be sealed and unsealed without damaging them. The envelopes they experimented with could be reopened, but those envelopes were closed and then reopened immediately. He noted that when he opened the August 2015 statement, he could not do so without damaging the envelope.

Ms. Cameron testified that she has 25 years of experience in commercial real estate, 13 of which were with A&C. She never met Ms. Richardson but met Mr. Richardson three times. She testified that all their interactions were cordial. She also testified that once a lease goes into default, the file is handed over to counsel and she has no further involvement in sending out billing statements or otherwise contacting the tenants. When there was a bankruptcy, she would refer the matter to Mr. Cattaneo. She testified that she had no contact with the Richardsons after the final walk-through with Mr. Richardson of the leased premises in the summer of 2014. Ms. Cameron also testified that she knew of no one at A&C who had animosity toward the Richardsons.

As for the derogatory comments on the billing statements, Ms. Cameron testified that not only did she have no involvement with

generating the billing statements, she would have had no reason to have written the specific comments. For example, the March 2015 statement contained the language, "YOU almost cost me my job!!!!" Ms. Cameron testified that she was never in danger of losing her job as a result of the lease default. The August 2015 statement contained racial slurs, referring to illegal Mexican immigrants and African-Americans, but Ms. Cameron is herself half Mexican-American, is married to a Mexican-American man, and has African-American and Filipino relatives.

Finally, Mr. Cattaneo testified that no one at A&C added the derogatory statements, that no one knew the Richardsons' attorney was African-American, and that no one at A&C had ever been accused of being racist.

In January 2018, the bankruptcy court issued an oral ruling. The court noted that, at trial, the Richardsons had clarified that they were not seeking damages for the telephone calls. The court found that all of the witnesses testified credibly, but the Richardsons had failed to meet their burden of proof to show that Ms. Cameron had violated the stay in any regard. Specifically, there was no evidence she was directly involved in generating the billing statements or in adding the derogatory language to those statements. The court also found that the Richardsons had not shown that any other representative of PRDO or A&C was responsible for the offending language. At the same time, the court could not find that the

8

language was added by Ms. Richardson. The bankruptcy court found, however, that A&C had willfully violated the automatic stay by sending billing statements to the Richardsons that were addressed in a manner that made it appear the statements were directed to Mr. Richardson personally.[7] Accordingly, the bankruptcy court found that the Richardsons were entitled to the reasonable attorneys' fees they incurred in enforcing the automatic stay, including fees incurred in prosecuting the stay violation. The court did not find evidence to support an award of either emotional distress or punitive damages.

The court then continued the matter for the parties to meet and confer and/or brief the appropriate amount of attorneys' fees to be awarded. The parties attempted mediation that was unsuccessful, and, after a further hearing, submitted supplemental briefing. The Richardsons'

---

[7]The lease provides that notices to the tenant are to be addressed as follows:

[Tenant]
[Street Address]
Escondido, California [Zip Code]
Tele: (760) XXX-XXXX
Attn: Jerry Richardson

The notices were addressed to:

Hut No. 8 at Plaza Rancho Del Oro
Jerry Richardson
[Street Address]
Escondido, CA [Zip Code]

9

counsel submitted billing statements for fees incurred during the litigation. In its "Order Regarding Fees" issued September 21, 2018, the bankruptcy court disallowed or reduced several categories of fees and ultimately awarded the Richardsons $20,983.13 in fees and costs to be paid by PRDO and A&C. The bankruptcy court explicitly declined to award any fees against Ms. Cameron because she "was not directly implicated other than as a possible agent of the Landlord in the only area where Debtors were successful[.]" The Richardsons timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court clearly erred in finding that the Richardsons failed to meet their burden to show that the offensive language on the billing statements was added by A&C personnel.

Whether the bankruptcy court abused its discretion in disallowing a portion of the attorneys' fees requested.

## STANDARDS OF REVIEW

Whether a party has willfully violated the automatic stay is a question of fact reviewed for clear error. *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson*

*(In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-75 (1985). "When factual findings are based on determinations regarding the credibility of witnesses, we give great deference to the bankruptcy court's findings, because the bankruptcy court, as the trier of fact, had the opportunity to note 'variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'" *In re Retz*, 606 F.3d at 1196 (quoting *Anderson*, 470 U.S. at 575).

The amount of sanctions imposed for a willful violation of the stay is reviewed for an abuse of discretion. *Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 7 (9th Cir. BAP 2002). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION

Section 362(k) of the Bankruptcy Code permits an individual debtor who has been injured by a willful violation of the automatic stay of § 362(a) to recover "actual damages, including costs and attorneys' fees, and, in

11

appropriate circumstances, . . . punitive damages." A stay violation is willful if a party knew of the automatic stay, and its actions in violation of the stay were intentional. *Eskanos & Adler*, 309 F.3d at 1215 (citing *Pinkstaff v. United States (In re Pinkstaff)*, 974 F.2d 113, 115 (9th Cir. 1992)). That A&C willfully violated the automatic stay in sending postpetition billing statements to the Richardsons is not in dispute in this appeal. Nor do the parties dispute that attorneys' fees incurred in prosecuting an action for damages under § 362(k) may be awarded as damages for a willful stay violation. *See America's Serv. Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, 803 F.3d 1095, 1101 (9th Cir. 2015) (en banc).

The Richardsons, however, contend that the bankruptcy court erred in finding that it could not determine who added the offensive language to the March, August, and November 2015 billing statements. They also assert that the bankruptcy court abused its discretion in disallowing or reducing various categories of attorneys' fees in calculating the appropriate sanctions award.

**A.      The bankruptcy court did not err in finding that the Richardsons did not meet their burden to show that A&C personnel added the offensive language to the billing statements.**

The Richardsons contend that the bankruptcy court erred when it did not find that the comments on the billing statements were added by someone working for A&C. They point out that the court found the billing statements were sent by A&C and that there was no evidence that the

Richardsons added the offensive language. They argue that this leads to the conclusion that, even if Ms. Cameron did not add the language, it had to have been added by someone working for A&C. As such, they contend, the court should have found PRDO and A&C culpable.

As noted by the bankruptcy court, the Richardsons had the burden to show by a preponderance of the evidence that PRDO or A&C willfully violated the stay by adding the offensive language. *Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1169-70 (10th Cir. 2007); *In re Paxton*, 596 B.R. 686, 694 (Bankr. N.D. Cal. 2019), *amended in part on other grounds*, No. 12-33036 HLB, 2019 WL 2462797 (Bankr. N.D. Cal. June 12, 2019).[8] Accordingly, the Richardsons needed to show that it was more likely than not that someone at A&C caused the language to be added. *United States v. Arnold & Baker Farms (In re Arnold and Baker Farms)*, 177 B.R. 648, 654 (9th Cir. BAP 1994), *aff'd*, 85 F.3d 1415 (9th Cir. 1996) ("Proof by the preponderance of the evidence means that it is sufficient to persuade the finder of fact that the proposition is more likely true than not.").

The bankruptcy court concluded, based on the evidence presented, that the Richardsons had not met their burden to prove it more likely than

---

[8]This burden is less stringent than that required to obtain a contempt finding for a willful stay violation when § 362(k) is not an available remedy. *See Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1190-91 (9th Cir. 2003) (moving party seeking to hold another in contempt has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court).

not that any agent of PRDO or A&C added the language:

> Finding that it's a 50/50 issue, that's the reason the Debtor doesn't prevail. It doesn't mean that I'm finding Ms. Richardson did it. It's just that I cannot conclude Ms. Cameron did, and I'm then left with I have no idea who did it. So the Debtor failed to . . . meet that burden, in that particular regard.

Hr'g Tr. (Jan. 12, 2018) at 25:16-22.

> As to the deplorable language, I can't find in favor of the movants. I'm emphasizing, again, I am not finding that the movants fabricated this language. I am not finding that the movants were responsible for this language. I simply cannot find under the theory advanced that A&C Properties did it.
> . . . .
>
> So put bluntly, the court can't tip the balance of probability beyond a 50/50 point. It's a seesaw that's entirely balanced with people of equal weight on both sides. You needed to get it to 51 percent, and I just can't get there under the theories advanced.

*Id.* at 28:1-6 and 29:1-6.

The Richardsons argue that the bankruptcy court's findings were illogical because they ignore the fact that the offensive language was specific to the situation between the parties, the Richardsons credibly denied adding the language, and there was no evidence the envelopes had been tampered with. While these facts suggest that someone at A&C could have added the language, it falls just short of establishing culpability. And

14

the Richardsons point to no evidence that would tip the balance in their favor to require a conclusion that someone at A&C added the offensive language. The Richardsons presented no expert testimony as to whether the envelopes had been tampered with and did not establish a chain of custody. As the bankruptcy court noted, it would have had to engage in "rank speculation" to determine who added the language. In short, the bankruptcy court did not clearly err in finding that the Richardsons had not met their burden to show that PRDO or A&C were responsible for adding the offensive language to the billing statements.

**B.    The bankruptcy court did not abuse its discretion in disallowing a portion of the attorneys' fees requested by the Richardsons as a sanction under § 362(k).**

Section 362(k) authorizes an award of reasonable attorneys' fees incurred in both ending the stay violation and in prosecuting an action for damages under the statute. *In re Schwartz-Tallard*, 803 F.3d at 1101. The Richardsons submitted billing statements showing they incurred $81,820.89 in fees and $2,679.74 in costs for the period January 18, 2016 to January 26, 2018, and $25,937.50 in fees and $2.66 in costs for the period January 29 to August 17, 2018. As noted, the bankruptcy court awarded fees significantly less than what was requested, ultimately awarding $20,983.13 in fees and costs.

The Richardsons object to three categories of reductions made by the bankruptcy court: the reduction for fees incurred in attempting to prove up

15

the telephone calls, the reduction for fees incurred for communications among their four co-counsel that were not explained, and the disallowance of all fees incurred after the bankruptcy court delivered its oral ruling on January 12, 2018. We will consider each of these categories in turn.

1. **Reduction for Fees Incurred in Unsuccessfully Prosecuting Phone Calls as Stay Violations**

The bankruptcy court reduced the fees requested by $18,287.25 on the ground that the fees related to alleged postpetition collection calls, which the Richardsons were unable to prove occurred. This reduction was made after the bankruptcy court had disallowed other categories of fees, leaving a balance of $36,587.25. The court determined that this amount represented fees incurred related to both the telephone calls and the billing statements, and thus found it appropriate to cut the remaining amount sought by approximately one-half.[9]

The Richardsons contend that this reduction was inappropriate because they did not pursue any damages related to the telephone calls. They refer the Panel to their reply to Respondents' opposition to the motion for sanctions, which reads:

> The phone calls were only placed by numbers suspected to be Respondents [sic] and were described mainly to show the animosity and lengths to which agents of Respondents were willing to go to collect the pre-petition debts.

[9]The court rounded up $18,293.63 (one half of $36,587.25) to $18,300.

As such, the communications to which Debtors request damages are specifically referring to the Billing Statements, including those that had harassing and racially derogatory language, and generally to any further violative communications. Should additional telephone communications be later provable, such may be the subject of supplemental briefing to this motion, or in the alternative, a separate motion.

Even if the Richardsons were not seeking damages specifically related to the phone calls, it is undisputed that fees were incurred in attempting to prove stay violations based on those calls. For example, in their opposition to Respondents' motion for summary judgment, the Richardsons asserted that they intended to call witnesses at trial to testify regarding the phone calls. In the joint statement of stipulated and disputed facts and issues of law submitted before trial, they listed as a disputed issue: "Whether Respondents knowingly violated 11 U.S.C. § 362 in regard to telephone communications to the Debtors." And at trial, the Richardsons called a third party witness (Ms. Collins) to support the claim that calls were made. Even if the purpose of attempting to prove the calls was to establish animosity that would provide a motive for the offensive language on the billing statements, the Richardsons did not succeed in proving PRDO or A&C culpable for that language. Accordingly, the bankruptcy court did not abuse its discretion in disallowing the portion of the fees related to assertions concerning the telephone calls.

## 2. $800 Reduction for Communications among Co-Counsel

The court noted that there were significant communications among the four attorneys representing the Richardsons and that, typically, all four attorneys billed both sides of the conversation, email, or text. The court thus reduced by half the $1,600 in fees requested as compensation for communications among the Richardsons' attorneys where no explanation was provided. Numerous time entries contained descriptions such as "Attorney [Name] – Outbound email to [other attorney]" with nothing to indicate the subject matter of the email.

The Richardsons argue that the billing entries lacked detail in order to protect client confidentiality, and that the communications were necessary for counsel to competently represent them. But they do not explain why at least a general description could not have been provided that would justify the multiple billing. They have not shown that the bankruptcy court abused its discretion in making this reduction.

## 3. Fees Incurred After Oral Ruling

The Richardsons complain that the bankruptcy court abused its discretion in disallowing fees and costs incurred after the court delivered its oral ruling on January 12, 2018. The Richardsons argue that the fees sought were not excessive and, in any event, resulted from PRDO's counsel being "obstinate" in his position that no fees or nominal fees should be awarded. Further, they argue that these fees are appropriate under

*Schwartz-Tallard* as part of the award for seeking damages under § 362(k).

As an initial matter, the court included in its calculation a portion of the fees incurred after January 12, 2018. The billing statements reflect that $81,820.89 of fees were incurred through January 26, 2018, which included $4,183.50 in fees incurred between January 19 and 26, 2018. In the Order Regarding Fees, the court used $81,817.50 as its starting point for calculating the fees to be awarded. Although it is not clear why there is a de minimis $3.39 difference between the figure quoted in the court's order and the figure on the billing statement, the $81,817.50 must have included the fees incurred between January 19 and 26, 2018.[10]

As for the $25,937.50 balance of the post-trial fees that were excluded from the court's starting figure, those fees were incurred from January 29 through August 17, 2018 and reflect time spent on communications among the Richardsons' co-counsel as well as with PRDO's counsel and Ms. Richardson, preparation of status reports for the bankruptcy court, appearing at hearings, and mediating the amount of fees to be awarded.

In its Order Regarding Fees, the court did not explicitly state its reason for not considering the fees incurred after January 26, 2018. In the bankruptcy court's tentative ruling issued August 8, 2018, it stated, "[t]he

---

[10]The $4,183.50 was included in a billing statement that covered the period from May 12, 2016, to January 26, 2018. The fees incurred after January 12, 2018, consisted primarily of time spent preparing billable invoices (13.7 hours), with the balance for time receiving and sending emails (.4 hours).

potential damages are the attorney fees incurred by the Debtors in bringing the Motion and proceeding through trial," suggesting that it did not intend to award any fees incurred thereafter. The court held a hearing the next day, but no transcript of that hearing was included in the record (nor does it appear on the bankruptcy court docket). At that hearing, the court may have further explained its rationale for disallowing post-trial fees. If so, it was the Richardsons' burden to provide the transcript from that hearing so that we could discern the basis for its ruling. *See Sallie Mae Serv., LP v. Williams (In re Williams)*, 287 B.R. 787, 791 (9th Cir. BAP 2002). Their failure to do so is a ground for affirmance. *See id.* at 791-92. If the bankruptcy court did not explain its rationale, we could remand.

But remand is not necessary "if a complete understanding of the issues may be obtained from the record as a whole or if there can be no genuine dispute about omitted findings." *Veal v. Am. Home Mortg. Serv., Inc. (In re Veal)*, 450 B.R. 897, 919–20 (9th Cir. BAP 2011) (citations omitted). Such is the case here: the bankruptcy court's comment in its August 8 tentative ruling (quoted above) suggests that the court found it inappropriate to award fees incurred after its oral ruling either as a matter of law or fact. Although the Richardsons argued in the bankruptcy court that *Schwartz-Tallard* **mandates** that the court award post-trial fees, the Ninth Circuit in that case made no such pronouncement, and we have found no authority supporting the proposition that fees incurred in

20

determining fees (essentially, fees on fees) after liability has been adjudicated under § 362(k) are **required** to be awarded.

Even if such fees were appropriately awarded as damages under § 362(k), the bankruptcy court has tremendous discretion to determine the reasonableness of fees, and we afford considerable deference to those determinations, given the court's familiarity with the parties and the litigation. *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Under the circumstances, the Richardsons have not met their burden to show the bankruptcy court abused its discretion in not awarding or including in its calculations the fees incurred after January 26, 2018.

## CONCLUSION

The bankruptcy court did not clearly err in finding that it could not hold PRDO or A&C liable for adding the offensive language to the billing statements. Nor have the Richardsons shown that the court abused its discretion in setting the amount of damages. We therefore AFFIRM.